UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x

PRINCESS DORCE, on behalf of herself
and all others similarly situated,

                         Plaintiff,

             -against-

MOHAMMED SULEIMAN; ALI
SULEIMAN; FARID SULEIMAN;
1133 METRO CHOICE, INC.; 1133
METRO CHOICE OF FULTON INC.;
BK86ST, INC.; BK86ST OF NY INC.;
SULZ WIRELESS INC; SULZ WIRELESS
1458 INC.; FLATBUSH CELL INC;
T-MOBILE USA, INC.; and METROPCS
NEW YORK LLC,

                       Defendants.

----------------------------------------------------x

25 Civ.  0049

**COMPLAINT**

**FLSA COLLECTIVE ACTION
AND RULE 23 CLASS ACTION**

      Plaintiff Princess Dorce, on her own behalf and on behalf of all others similarly situated, by and through her attorneys, Wang Hecker LLP, for her collective and class action Complaint alleges as follows:

## NATURE OF THE ACTION

      1.     Defendants are the owners and/or franchisors of numerous Metro by T-Mobile retail stores throughout Brooklyn.

      2.     Plaintiff is a former retail employee of Defendants.

      3.     During her employment, Defendants failed to pay Plaintiff and the members of the class she seeks to represent in compliance with federal and state minimum wage and overtime requirements.

4.      Defendants should know better.  In 2021, Defendants Mohammed Suleiman, Ali Suleiman, and Farid Suleiman were sued in this Court regarding their similar practice of failing to comply with federal and state overtime and minimum wage requirements to employees of other entities (*Aribou v. Suleiman*, 20-cv-4511 (E.D.N.Y)).  They settled that prior case.

5.      Defendants also failed to comply with the New York City Fair Workweek Law, Title 20, Chapter 12 of the New York City Administrative Code, which requires retail employers to provide their employees with predictable schedules with advance notice and sufficient time between shifts.

6.      Defendants also failed to comply with the New York City Earned Safe and Sick Time Act, Title 20, Chapter 8 of the New York City Administrative Code, which requires retail employers to provide their employees with predictable schedules with advance notice and sufficient time between shifts.

7.      Plaintiff now seeks to hold Defendants accountable to her and the class she seeks to represent for Defendants' violations of their statutory rights.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA").

9.      This Court has supplemental jurisdiction over the New York State and New York City claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because each Defendant resides in the State of New York and one or more of the Defendants resides in this District.

11.    This Court has personal jurisdiction over each Defendant because each Defendant is domiciled in the State of New York, because each Defendant committed unlawful acts in the State of New York, and because each Defendant caused injury to Plaintiff in the State of New York.

## THE PARTIES

12.    Plaintiff Princess Dorce is an individual who resides in the County of Kings, New York.

13.    Defendant Mohammed Suleiman is an individual who upon information and belief resides in the County of Kings, New York.  Upon information and belief, Defendant Mohammed Suleiman has a substantial ownership stake in all of the corporate defendants named herein other than T-Mobile USA, Inc. and MetroPCS New York, LLC, and asserted substantial operational control over Plaintiff's employment.

14.    Defendant Ali Suleiman is an individual who upon information and belief resides in the County of Kings, New York.  Upon information and belief, Ali Mohammed Suleiman has a substantial ownership stake in all of the corporate defendants named herein other than T-Mobile USA, Inc. and MetroPCS New York, LLC, and asserted substantial operational control over Plaintiff's employment.

15.    Defendant Farid Suleiman is an individual who upon information and belief resides in the County of Kings, New York.  Upon information and belief, Defendant Farid Suleiman has a substantial ownership stake in all of the corporate defendants named herein other

3

than T-Mobile USA, Inc. and MetroPCS New York, LLC, and asserted substantial operational control over Plaintiff's employment.

16.    Defendant 1133 METRO CHOICE, INC. is a New York corporation that is headquartered in the County of Kings, New York.

17.    Defendant 1133 METRO CHOICE OF FULTON INC. is a New York corporation that is headquartered in the County of Kings, New York.

18.    Defendant BK86ST, INC. is a New York corporation that is headquartered in the County of Kings, New York.

19.    Defendant BK86ST OF NY INC. is a New York corporation that is headquartered in the County of Kings, New York.

20.    Defendant SULZ WIRELESS INC is a New York corporation that is headquartered in the County of Kings, New York.

21.    Defendant SULZ WIRELESS 1458 INC. is a New York corporation that is headquartered in the County of Kings, New York.

22.    Defendant FLATBUSH CELL INC is a New York corporation that is headquartered in the County of Kings, New York.

23.    Upon information and belief, Defendants 1133 METRO CHOICE, INC. and/or 1133 METRO CHOICE OF FULTON INC. own and operate a Metro by T-Mobile retail store located at 1133 Fulton Street in Brooklyn.

24.    Upon information and belief, Defendants BK86ST, INC. and/or BK86ST OF NY INC. own and operate Metro by T-Mobile retail stores located at 2254 86th Street in Brooklyn and at 6415 Roosevelt Avenue and 5734 Myrtle Avenue in Queens.

25.    Upon information and belief, Defendants SULZ WIRELESS INC and/or SULZ WIRELESS 1458 INC. own and operate Metro by T-Mobile retail stores located at 1458 Rockaway Parkway in Brooklyn and at 17011 Jamaica Avenue in Queens.

26.    Upon information and belief, Defendant FLATBUSH CELL INC owns and operates a Metro by T-Mobile retail store located at 1037 1/2 Nostrand Avenue in Brooklyn.

27.    Upon information and belief, the businesses of Defendants 1133 METRO CHOICE, INC., 1133 METRO CHOICE OF FULTON INC., BK86ST, INC., BK86ST OF NY INC., SULZ WIRELESS INC, SULZ WIRELESS 1458 INC., and FLATBUSH CELL INC are all operated under common ownership and/or management and all owned and/or controlled by Defendants Mohammed Suleiman, Farid Suleiman, and Ali Suleiman.

28.    Defendants 1133 METRO CHOICE, INC., 1133 METRO CHOICE OF FULTON INC., BK86ST, INC., BK86ST OF NY INC., SULZ WIRELESS INC, SULZ WIRELESS 1458 INC., FLATBUSH CELL INC, Mohammed Suleiman, Farid Suleiman, and Ali Suleiman are referred to herein collectively as the "Suleiman Defendants."

29.    Upon information and belief, Defendant T-Mobile USA, Inc. ("T-Mobile") is a foreign business corporation with a principal executive office at 12920 SE 38th Street, Bellevue, Washington 98006.  Among other services, T-Mobile offers wireless cellular network services to consumers under the brand name "Metro by T-Mobile" or "Metro".

30.    Upon information and belief, Defendant MetroPCS New York, LLC ("MetroPCS NY") is a foreign limited liability company.  It is a subsidiary of T-Mobile that manages and contracts with the entities that run hundreds of Metro stores in New York City, including stores owned and operated by the Suleiman Defendants.

31.     T-Mobile and MetroPCS NY are referred to herein collectively as the "MetroPCS Defendants."

## DEMAND FOR JURY TRIAL

32.     Plaintiff hereby demands a trial by jury.

## FRANCHISOR LIABILITY

33.     The MetroPCS Defendants and the Suleiman Defendants have entered into a franchisor-franchisee relationship with respect to Metro locations operated by Defendants 1133 METRO CHOICE, INC., 1133 METRO CHOICE OF FULTON INC., BK86ST, INC., BK86ST OF NY INC., SULZ WIRELESS INC, SULZ WIRELESS 1458 INC., and FLATBUSH CELL INC.

34.     The MetroPCS Defendants require employees at franchises to complete mandatory in-person and web-based training provided by the MetroPCS Defendants.  The MetroPCS Defendants require that this training be completed within 30 days, and new employees may not be alone on the sales floor prior to attending the training.

35.     The MetroPCS Defendants require that new employees at franchises be reported to the MetroPCS Defendants' "field team" before they begin assisting customers.

36.     The MetroPCS Defendants require franchises to have a dedicated computer or tablet to be used for employee training.

37.     The MetroPCS Defendants set forth guidelines for franchisees' staffing based on specific factors, including traffic, sales, payments, operational tasks, marketing tactics, and customer services.

38.    The MetroPCS Defendants require franchisees to keep staffing levels at documented levels, and the MetroPCS Defendants review staffing expectations at franchises twice per year.

39.    The MetroPCS Defendants maintain the authority to require that franchisees staff franchises with a minimum of two employees at all times.

40.    The MetroPCS Defendants require that franchisees maintain Workers' Compensation and Employer's Liability insurance.

41.    The MetroPCS Defendants direct franchisees to have a formal and documented employee review process.

42.    The MetroPCS Defendants direct all franchisees to maintain a documented employee/staff recognition program.

43.    The MetroPCS Defendants require that all customer-facing employees at franchises comply with the MetroPCS Defendants' dress code guidelines and wear name tags.

44.    The MetroPCS Defendants direct that all franchisees must maintain clear compensation structures for every employee, sub-dealer, and manager that include monthly goals.

45.    The MetroPCS Defendants prohibit franchisees from adopting sales or commission plans that could have the effect of discouraging employees from allowing customers to purchase their preferred services or equipment or rewarding employees for selling customers services or equipment they do not want.

46.    The MetroPCS Defendants require that franchisees must exclusively use marketing and advertising materials provided by the MetroPCS Defendants.

47. The MetroPCS Defendants' account management team visits each franchise at least quarterly to review performance and review the staffing, environment, inventory, operations, and marketing.

48. The MetroPCS Defendants maintain the authority to examine and audit the books and records of franchisees and require franchisees to maintain those records in a detailed and accurate manner.

49. The MetroPCS Defendants maintain the authority to inspect franchisees' premises, packaging, point of sale materials, and advertising in order to protect and maintain the standards of quality established by the MetroPCS Defendants with respect to its trademarks and other matters.

50. The MetroPCS Defendants require that all franchisees have documented security guidelines that comply with detailed minimum recommended security guidelines.

51. The MetroPCS Defendants maintain detailed requirements that every franchise location must adhere to, including with respect to signs, painting, flooring, fixtures, lighting, and marketing.

52. The MetroPCS Defendants provide furniture, fixtures, and equipment to franchises that remains the property of the MetroPCS Defendants.

53. The MetroPCS Defendants direct that all franchises must be open seven days a week.

54. The MetroPCS Defendants direct all franchisees to maintain a day-to-day operations manual.

**FACTS**

55.    Plaintiff began to work for the Suleiman Defendants as a retail employee in or about February 2024.

56.    Plaintiff was referred to the Suleiman Defendants by Javier Sanchez Nino, who, upon information and belief, was a Retail Development Manager employed by or affiliated with the MetroPCS Defendants.

57.    Depending on the day, Plaintiff worked at either the 1133 Fulton Street, 1037 1/2 Nostrand Avenue, or 1458 Rockaway Parkway location operated by Defendants.

58.    Plaintiff worked as a full-time retail clerk.

59.    Plaintiff was not paid by the hour.

60.    Instead, Plaintiff was paid a flat rate of $105.00 per day for shifts that typically lasted more than ten and a half hours.

61.    Plaintiff worked on Tuesdays, Thursdays, Fridays, Saturdays, and Sundays, with Mondays and Wednesdays off.

62.    Other than on Sundays, Plaintiff arrived at work at around 9:30 a.m. and left work at around 8:10 p.m.

63.    The Suleiman Defendants failed to pay Plaintiff the statutorily required minimum wage.

64.    At all relevant times, Plaintiff was an employee of the Suleiman Defendants, not an independent contractor.

65.    At no time did Plaintiff ever choose when, where, or how she performed services for the Suleiman Defendants.

66.     Plaintiff did not provide facilities, equipment, tools, or supplies in connection with the services she performed for the Suleiman Defendants.

67.     At no time did Plaintiff ever choose or set her hours of work for the Suleiman Defendants.

68.     At all relevant times, the Suleiman Defendants expected Plaintiff to provide services exclusively to them.

69.     At all relevant times, the Suleiman Defendants set Plaintiff's rate of pay.

70.     At all relevant times, the Suleiman Defendants supervised Plaintiff's performance of her duties.

71.     At all relevant times, the Suleiman Defendants required Plaintiff to seek permission for absences from work.

72.     At the time of Plaintiff's hire, the Suleiman Defendants did not provide her with written notice of her regular rate of pay, her overtime rate of pay, how she would be paid, or her regular payday as required by the New York Wage Theft Prevention Act.

73.     The Suleiman Defendants never provided Plaintiff with wage statements or pay stubs containing all of the information required by the New York Wage Theft Prevention Act.

74.     The Suleiman Defendants never paid Plaintiff an overtime premium for the hours she worked in excess of forty per week, even though the Suleiman Defendants were aware that Plaintiff regularly worked more than forty hours in a week.

75.     The Suleiman Defendants never paid Plaintiff a spread of hours premium for the hours she worked in excess of ten per day, even though the Suleiman Defendants were aware that Plaintiff regularly worked more than ten hours in a day.

76.     The Suleiman Defendants operate retail businesses, have 20 or more employees, and engage primarily in the sale of consumer goods at stores located in New York City.

77.     New York City retail employers must provide employees with written work schedules that include dates, times, and locations of all shifts no later than 72 hours before the start of the schedule, and the schedule must cover at least seven days.

78.     The Suleiman Defendants regularly violate this rule.  It is the Suleiman Defendants' practice to provide their employees with written work schedules for the week on Sunday evening or even Monday morning.

79.     The Suleiman Defendants do not provide their employees with sick time, whether paid or unpaid.

80.     The Suleiman Defendants never provided Plaintiff with written notice of her right to sick time, including the accrual and use of sick time and the right to be free from retaliation.

81.     At 2:26 p.m. on April 21, 2024, while Plaintiff was at work, she informed her supervisor that she was physically ill and needed to seek immediate medical attention.

82.     Plaintiff's physical sickness was not foreseeable.

83.     Plaintiff's supervisor denied her request to take sick time or seek immediate medical attention, instructing Plaintiff to remain at the store until 4:00 p.m.

84.     Plaintiff reluctantly acquiesced and remained at the store until 4:00 p.m. as directed, even though she was too sick to do so comfortably or responsibly.

85.     As a direct and proximate result of Plaintiff's request for sick time, the Suleiman Defendants terminated Plaintiff's employment.

86.     Plaintiff's unlawful termination by the Suleiman Defendants caused her to suffer substantial emotional distress.

87.     Plaintiff's unlawful termination by the Suleiman Defendants caused her to suffer substantial economic loss.

## FLSA COLLECTIVE ACTION ALLEGATIONS

88.     Plaintiff brings the First and Second Claims for Relief below as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt service employees who were employed by Defendants on or after the date that is three years before the filing of the Complaint in this action (the "FLSA Collective Plaintiffs").

89.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to the policy and practice of Defendants of willfully failing and refusing to pay them the legally required minimum wage and overtime pay.

90.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).

91.     The FLSA Collective Plaintiffs are readily ascertainable.

92.     The names and addresses of the FLSA Collective Plaintiffs are readily available from the Defendants.

93.     Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

94.     Plaintiff brings the Third, Fourth, Fifth, and Sixth Claims for Relief below pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf all non-exempt service employees who were employed by Defendants on or after the date that is six years before the filing of the Complaint in this action (the "State Law Class Period").

95.    All such persons are referred to herein as members of the "State Law Class."

96.    Plaintiff brings the Seventh and Eighth Claims for Relief below pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all employees who were employed by Defendants on or after the date that is two years before the filing of the Complaint in this action (the "City Law Class Period").

97.    All such persons are referred to herein as members of the "City Law Class."

98.    All members of the State Law Class and/or the City Law Class are referred to herein as "Class Members."  The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from records maintained by Defendants.

99.    Plaintiff and the Class Members performed substantially similar duties, including opening and closing Defendants' retail stores; selling mobile phones, accessories, and service plans; and helping customers troubleshoot problems with phones.

100.    The hours assigned and worked, the positions held, the schedules that were provided to, and the rates of pay for each Class Member are also determinable from records maintained by Defendants.

101.    The names and addresses of the Class Members are readily available from Defendants.

102.    Notice can be provided by means permissible under Rule 23.

103.    The proposed classes are so numerous that joinder of all Class Members would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

104.    Although the precise number of such persons is unknown, and the facts on which the calculation of that number depends are presently within the sole control of Defendants, upon information and belief, there are more than forty members of each proposed class.

105.    Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

106.    All the Class Members were subject to the same corporate policies and practices of the Defendants, as alleged herein, of failing to pay minimum wage, overtime, and spread of hours compensation; failing to provide adequate wage notices and statements; failing to adhere to the scheduling requirements of the New York City Fair Workweek Law, and failing to provide sick time as required by the New York City Earned Safe and Sick Time Act.

107.    The policies and practices of Defendants complained about herein affected all Class Members similarly.

108.    Plaintiff is able to fairly and adequately represent and protect the interests of the proposed classes and has no interests antagonistic to the proposed classes.

109.    Plaintiff is represented in this action by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

110.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly given that most if not all individual Class Members lack the financial resources to vigorously prosecute a lawsuit against their employers.

111.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

112.    Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class

Members to redress the wrongs done to them.

113.    The issues in this action can be decided by means of common, class-wide proof.

114.    In addition, if appropriate, the Court can, and is empowered to, fashion methods

to efficiently manage this action as a class action.

115.    There are questions of law and fact common to each of the proposed classes that

predominate over any questions affecting only individual Class Members, including:

a)   Whether Defendants employed Plaintiff and the Class Members within the
meaning of New York law;

b)   The policies and practices of Defendants regarding classifying workers as
employees or independent contractors;

c)   Whether Defendants properly compensated Plaintiff and the Class
Members for the minimum wage, overtime hours, and spread of hours shifts;

d)   Whether Defendants provided Plaintiff and the Class Members with
adequate wage notices and wage statements;

e)   Whether Defendants complied with the scheduling requirements of the
New York City Fair Workweek Law; and

f)   Whether Defendants complied with the sick time requirements of the New
York City Earned Safe and Sick Time Act.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations)**
**29 U.S.C. § 201, *et seq.***
**Brought by Plaintiff and the FLSA Collective Plaintiffs Against All Defendants**

116.    Plaintiff realleges and incorporates by reference all previous paragraphs of this

Complaint.

117.    At all relevant times, Defendants have been and continue to be "employers"

engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within

the meaning of the FLSA, 29 U.S.C. § 203.

118.    Throughout the period covered by these claims, Plaintiff and the FLSA Collective Plaintiffs at times worked in excess of forty hours per workweek.

119.    At all relevant times, Defendants operated under a policy and practice of willfully failing and refusing to pay Plaintiff and the FLSA Collective Plaintiffs the appropriate overtime rate for work in excess of forty hours per workweek.

120.    At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs at the required overtime rates for hours worked in excess of forty hours per workweek.

121.    The FLSA extends liability to any "employer" who violates the statute's overtime provisions.  *See* 29 U.S.C. § 216(b), (e)(2).

122.    An "employer" is defined as "any person acting directly or indirectly in the interest of an employer."  *Id*. § 203(d).

123.    Defendants were each Plaintiff's employers and therefore are subject to liability.

124.    Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

<u>**SECOND CLAIM FOR RELIEF**</u>
**(FLSA Minimum Wage Violations)**
**29 U.S.C. § 201, *et seq.***
**Brought by Plaintiff and the FLSA Collective Plaintiffs Against All Defendants**

125.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

126.    At all relevant times, Defendants have been and continue to be "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

127.    Throughout the period covered by these claims, Plaintiff and FLSA Collective Plaintiffs at times were paid less than the federal minimum wage.

128.    At all relevant times, Defendant operated under a policy and practice of willfully failing and refusing to pay Plaintiff and the FLSA Collective Plaintiffs the federal minimum wage.

129.    At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiff and the FLSA Collective Plaintiffs the federal minimum wage.

130.     The FLSA extends liability to any "employer" who violates the statute's overtime provisions.  *See* 29 U.S.C. § 216(b), (e)(2).

131.    An "employer" is defined as "any person acting directly or indirectly in the interest of an employer."  *Id*. § 203(d).

132.    Defendants were each Plaintiff's employers and therefore are subject to liability.

133.    Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, seeks damages in the amount of their respective unpaid minimum wage compensation, liquidated damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(New York Labor Law Overtime Violations)**
**N.Y. Labor Law § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

134.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

135.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying proper overtime wages for all hours worked in excess of forty hours in any workweek.

136.    Defendants willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members at the required overtime rate for hours worked in excess of forty hours per workweek.

137.    Defendants were all Plaintiff's employers pursuant to New York Labor Law ("NYLL") § 651(6) and therefore are subject to liability.

138.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by NYLL § 663.

### FOURTH CLAIM FOR RELIEF
**(New York Labor Law Minimum Wage Violations)**
**N.Y. Labor Law § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

139.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

140.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying the required minimum wage.

141.    Defendants willfully, regularly, and repeatedly failed to pay Plaintiff and the Class Members the required minimum wage.

142.    Defendants were all Plaintiff's employers pursuant to NYLL § 651(6) and therefore are subject to liability.

143.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by NYLL § 663.

**FIFTH CLAIM FOR RELIEF**
**(New York Spread of Hours Violations)**
**N.Y. Comp. Code R. & Regs. tit. 12, § 142-1**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

144.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

145.    Plaintiff and the Class Members at times had workdays that lasted more than ten hours.

146.    Defendants willfully and intentionally failed to compensate Plaintiff and the Class Members one hour's pay at the basic New York minimum hourly wage rate for all workdays that spanned more than ten hours as required by New York law.

147.    Defendants were all Plaintiff's employers pursuant to NYLL § 651(6) and therefore are subject to liability.

148.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages, including compensatory damages and liquidated damages, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(New York Wage Notice and Statement Requirements)**
**N.Y. Labor Law §§ 195, 198**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

149.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

150.    Defendants did not provide Plaintiff and the Class Members with wage notices and statements that contained the required information under NYLL § 195.

151.    Defendants' failure to provide Plaintiff with accurate wage statements denied her statutory right to receive true and accurate information about the nature of her employment and related compensation policies.

152.    Defendants' failure to provide Plaintiff with accurate wage statements deprived her of the information necessary to review her wages and hours worked and therefore was a direct cause for her economic injury and, in fact, resulted in her wages being underpaid.

153.    If Defendants had complied with wage notices and wage statements requirements, Plaintiff would have been able to see that she was not being lawfully paid and would have been able to avoid underpayment of her wages.

154.    Plaintiff was harmed by the denial of her statutory rights because she lacked the wage and hours information that would have allowed her to recognize and challenge Defendants' failure to pay overtime wages and other compensation that was due.

155.    As a result of Defendants' unlawful conduct, Plaintiff and the Class Members are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**(Failure to Provide Timely Advance Notice of Work Schedules)**
**New York City Fair Workweek Law, ACNY §§ 20-913, 20-924(f)**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

152.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

153.    At all relevant times, Plaintiff and the Class Members were "retail employees" as defined in N.Y.C. Admin. Code § 20-912.

154.    At all relevant times, Defendants were "retail employers" as defined in N.Y.C. Admin. Code § 20-912.

155.    Pursuant to N.Y.C. Admin. Code § 20-912, a retail employer must provide a retail employee with a written work schedule no later than 72 hours before the first shift on the work schedule.

156.    Pursuant to N.Y.C. Admin. Code § 20-1211, Plaintiff and the Class Members are entitled to compensatory damages, any other relief required to make them whole, and attorneys' fees.

**EIGHTH CLAIM FOR RELIEF**
**(Denial of Sick Time)**
**New York City Earned Safe and Sick Time Act, ACNY §§ 20-913, 20-924(f)**
**Brought by Plaintiff and the Proposed Classes Against All Defendants**

157.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

158.    At all relevant times, Plaintiff and the members of the Class were "employees" as defined in A.C.N.Y. § 20-912.

159.    At all relevant times, Defendants were "employers" as defined in A.C.N.Y. § 20-912.

21

160.    Upon information and belief, pursuant to A.C.N.Y. § 20-912(a), Plaintiff and the members of the Class were entitled to paid sick time.

161.    In the alternative, pursuant to A.C.N.Y. § 20-912(b), Plaintiff and the members of the Class were entitled to unpaid sick time.

162.    Pursuant to A.C.N.Y. § 20-914(a)(1), Plaintiff and the members of the Class were entitled to use their accrued sick time, whether paid or unpaid, for absence from work due to their physical or mental illness, injury, or health condition, or their need for medical diagnosis, care, or treatment of a physical or mental illness, injury, or health condition, or their need for preventive medical care.

163.    Pursuant to A.C.N.Y. § 20-919, Defendants were required to provide Plaintiff and the Class with written notice of their right to sick time, including the accrual and use of sick time and the right to be free from retaliation.

164.    Defendants failed to provide Plaintiff or the Class with such notice.

165.    Defendants failed to provide Plaintiff or the Class with the sick time that is required by the New York City Earned Safe and Sick Time Act.

166.    Pursuant to A.C.N.Y. § 20-924(d) and (f), Plaintiff and the Class are entitled to recover from Defendants monetary damages in an amount to be determined at trial, including, for each instance of sick time taken by Plaintiff or a member of the Class but unlawfully not compensated by Defendants, three times the wages that should have been paid or $250.00, whichever is greater; for each instance of sick time requested by an employee but unlawfully denied, statutory damages of $500.00; for each employee covered by Defendants' unlawful policy and practice of not providing or refusing to allow the use of accrued sick time statutory

22

damages of $500.00; plus appropriate injunctive and declaratory relief, attorney's fees and costs, and such other relief as such court deems appropriate.

## NINTH CLAIM FOR RELIEF
### (Unlawful Retaliation)
**New York City Earned Safe and Sick Time Act, ACNY §§ 20-918(b), 20-924(f)**
**Brought by Plaintiff Against All Defendants**

167.    Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint.

168.    At all relevant times, Plaintiff was an "employee" as defined in A.C.N.Y. § 20-912.

169.    At all relevant times, Defendants were "employers" as defined in A.C.N.Y. § 20-912.

170.    Upon information and belief, pursuant to A.C.N.Y. § 20-912(a), Plaintiff was entitled to paid sick time.

171.    In the alternative, pursuant to A.C.N.Y. § 20-912(b), Plaintiff was entitled to unpaid sick time.

172.    Pursuant to A.C.N.Y. § 20-914(a)(1), Plaintiff was entitled to use her accrued sick time, whether paid or unpaid, for absence from work due to her physical illness, injury, or health condition, or her need for medical diagnosis, care, or treatment of a physical illness, injury, or health condition, or her need for preventive medical care.

173.    Pursuant to A.C.N.Y. § 20-914(c), Plaintiff was not required to provide Defendants with advance notice of her use of sick time unless such use was foreseeable.

174.    Pursuant to A.C.N.Y. § 20-919, Defendants were required to provide Plaintiff with written notice of her right to sick time, including the accrual and use of sick time and the right to be free from retaliation.

23

175.    Defendants failed to provide Plaintiff with such notice.

176.    Defendants unlawfully terminated Plaintiff's employment because she requested to use sick time.

177.    Pursuant to A.C.N.Y. §§ 20-924(d) and (f), Plaintiff is entitled to recover from Defendants monetary damages in an amount to be determined at trial, including, three times the wages that she should have been paid when she was denied sick time or $250.00, whichever is greater; statutory damages of $500.00 for the denial of her request for sick time; statutory damages of $500.00 for being subjected to Defendants' unlawful policy and practice of not providing or refusing to allow the use of accrued sick time; for her unlawful discharge, all wages and benefits lost, statutory damages of $2,500, and reinstatement; plus appropriate injunctive and declaratory relief, attorney's fees and costs, and such other relief as such court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs and the members of the Class, requests that the Court grant the following relief:

A.    Designate this action as a collective action on behalf of the FLSA Collective Plaintiffs and order the issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designate Plaintiff as Representative of the FLSA Collective Plaintiffs;

C.    Certify this action as a class action pursuant to F.R.C.P. 23;

D.    Appoint Plaintiff's counsel to serve as class counsel;

E.    Declare that Defendants' policies and practices with respect to the

payment of wages, shift scheduling, and sick time are unlawful;

F.    Award compensatory damages;

G.    Award statutory damages;

H.    Award reasonable attorneys' fees and costs, including expert fees;

I.    Award pre-judgment and post-judgment interest, as provided by law; and

J.    Award such other and further legal and equitable relief as this Court

deems just and proper.

DATED:  New York, New York
          January 3, 2025

WANG HECKER LLP


By:    /s/ Eric Hecker
       Eric Hecker
       Alexander Goldenberg
       Daniel Mullkoff
       305 Broadway, Suite 607
       New York, New York 10007
       (212) 620-2602

       *Attorneys for Plaintiff and the
       Putative Class*